# In the United States Court of Federal Claims

### No. 19-508C
### Filed: October 9, 2019
### Redacted Version Issued for Publication: November 2, 2019[1]

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * *  *  | |
| | * |
| **LAND SHARK SHREDDING, LLC,** | * |
| | * |
| Protestor, | * |
| | * **Pre-Award Bid Protest; Motion to** |
| **v.** | * **Dismiss; Failure to State a Claim;** |
| | * **Lack of Subject Matter Jurisdiction;** |
| **UNITED STATES,** | * **Service-Disabled Veteran-Owned** |
| | * **Small Business Rule of Two** |
| Defendant. | * **Doctrine.** |
| | * |
| * * * * * * * * * * * * * * * * * * *  *  | * |

**Joseph A. Whitcomb**, Whitcomb, Selinsky, McAuliffe, PC, Denver, CO, for protestor.

**Sonia M. Orfield**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her was **Steven J. Gillingham**, Assistant Director, Commercial Litigation Branch, **Robert E. Kirschman, Jr.**, Director, Commercial Litigation Branch, and **Joseph H. Hunt**, Assistant Attorney General, Civil Division. Of counsel was **Natica C. Neely**, Staff Attorney, United States Department of Veterans Affairs, Office of General Counsel, District Contracting National Practice Group, Washington, D.C.

## O P I N I O N

<u>**HORN, J.**</u>

Protestor Land Shark Shredding, LLC (Land Shark Shredding) challenges the cancellation of Solicitation No. 36C24119Q0003 for document shredding and destruction services issued by the Department of Veterans Affairs (VA) for the White River Junction VA Medical Center, located at White River Junction, Vermont, and for seven surrounding White River Junction clinics located in Vermont and New Hampshire, also known as White River Junction Community Based Outpatient Clinics (CBOCs). Because, according to protestor, Land Shark Shredding is a service-disabled veteran-owned small business (SDVOSB) contractor, and the lowest-priced of two available SDVOSB contractors that

---

[1] This Opinion was issued under seal on October 9, 2019. The parties were asked to propose redactions prior to public release of the Opinion. This Opinion is issued with some of the redactions that the parties proposed in response to the court's request. Words which are redacted are reflected with the notation: "[redacted]."

bid on Solicitation No. 36C24119Q0003, according to protestor, the VA was required to make a contract award to protestor under the "Rule of Two" doctrine contained at 38 U.S.C. § 8127(d) (2018). Protestor argues that the VA's decision to cancel Solicitation No. 36C24119Q0003 because the VA had found that neither protestor's nor the second, offering SDVOSB contractor's prices were "fair and reasonable" it was a "flagrant disregard for federal procurement law and Congressional intent," and, thus, "lacked a rational basis."

## FINDINGS OF FACT

### Task Orders VA241-14-F-0113 and VA241-14-F-1928 for Document Shredding Services

In 2013, the VA awarded Task Order VA241-14-F-0113 in the amount of $64,800.00 for document shredding services at the White River Junction VA Medical Center and Task Order VA241-14-F-1928 in the amount of $65,260.20 for document shredding services at the White River Junction CBOCs. The two task orders were awarded under the General Services Administration (GSA) Federal Supply Schedule (FSS) and both were awarded to Shred This Inc., SecurShred (SecurShred), "a small business." Performance under the two task orders was scheduled to end on March 31, 2019. The VA subsequently issued a modification to Task Order VA241-14-F-0113 for the White River Junction VA Medical Center, which increased the award amount from $64,800.00 to approximately $106,950.00. The total for both task orders, including the modifications to Task Order VA241-14-F-0113, was approximately $172,210.20.

Subsequently, the VA submitted a requirement for document shredding services at the White River Junction VA Medical Center and the White River Junction CBOCs, with performance set to start on April 1, 2019, following the March 31, 2019 end date of SecurShred's performance under Task Order VA241-14-F-0113 and Task Order VA241-14-F-1928. Unlike the two previous task orders, which were issued under the GSA FSS, the VA decided to compete the requirement for document services at the White River Junction VA Medical Center and the White River CBOCs as a SDVOSB set-aside procurement.

### July 19, 2018 Independent Government Cost Estimate Memorandum

On July 19, 2018, the VA issued an internal memorandum with the subject line "Independent Government Cost Estimate for VA-241—14-F-0113," which summarized the independent government cost estimate (IGCE) for SecurShred's VA-241-14-F-0113 Task Order for the White River Junction VA Medical Center. The July 19, 2018 IGCE memorandum stated:

> the independent government estimate for the proposed solicitation[2] are [sic] as follows:

---

[2] Although the July 19, 2018 IGCE memorandum addressed SecurShred's VA-241-14-F-0113 Task Order, it is unclear to which solicitation is the "proposed solicitation"

(i) The estimated budget is as indicated:

    (a). [sic] Base Period: 01 October 2018 –
30  September 2019: $[redacted]
    (b) Option year 1-$[redacted]
    (c) Option year 2-$[redacted]
    (d) Option year 3-$[redacted]
    (e) Option year 4-$[redacted]

(ii) The estimated budget is inclusive to base plus four (4) one-year option periods. The budget estimate is based on historical data and an assessment of future needs. The contract will not represent a commitment to, or imply funding for, specific option periods or business areas. All option periods and business areas will be authorized and/or funded on an individual basis. **The grand total including option years is $**[redacted] [sic]

(emphasis in original).

The July 19, 2018 IGCE memorandum also stated that "this estimate draws heavily on researched past price history with minor adjustments for changes in specifications, quantities, location and task frequency."

According to defendant's motion to dismiss and cross-motion for judgment on the administrative record, the VA used the July 19, 2018 IGCE memorandum as a price comparison tool when evaluating protestor's proposal for Solicitation No. 36C241119Q0003, the solicitation at issue in the above-captioned protest. Also, according to the contracting officer's internal memorandum, dated January 11, 2019, the contracting officer used the July 19, 2018 IGCE memorandum as a justification for her decision to cancel the solicitation because protestor's price exceeded the July 19, 2018 IGCE memorandum.

<u>October 29, 2018 Funding Request</u>

On October 29, 2018, the VA issued a document titled "REQUEST, TURN-IN, AND RECEIPT FOR PROPERTY OR SERVICES," addressed to the "REQUESTING OFFICE" of the "OFFICE" of "FACILITIES MANAGEMENT SERVICE" for federal funding for "1 YR" for the "<u>R</u>EMOVAL <u>OF</u> <u>S</u>ECURE <u>S</u>HRED <u>C</u>ONTAINERS <u>F</u>ROM <u>W</u>HITE <u>R</u>IVER <u>J</u>UNCTION, VT <u>M</u>EDICAL <u>C</u>ENTER <u>AND</u> <u>C</u>OMMUNITY <u>B</u>ASED <u>O</u>UTPATIENT <u>C</u>LINICS (CBOC'<u>S</u>)," and listed the "TOTAL COST" as "$35000.00." (all capitalization and emphasis in original). It is unclear from the October 29, 2018 document, however, whether the funding request was approved. The only reference contained on the October 29, 2018 document regarding an approval of funding is the following notation:

_____

referenced.

<u>SIGNATURE</u> <u>OF</u> <u>APPROVING</u> <u>OFFICIAL</u> <u>DATE</u>
/ES/ JOSEPH NOLIN
JOSEPH NOLIN
ASST CHIEF, FMS, WRJ     OCT 22, 2018

(all capitalization and emphasis in original). In addition, there is no explanation contained in the October 29, 2018 document which explains to which contract the funding would be allocated or why the government requested only $35,000.00 in funding. The October 29, 2018 document notes that the "VENDOR" was "TBD [to be determined]." (capitalization in original). Defendant in the above-captioned case cites to the October 29, 2018 document as evidence that the government allocated $35,000.00 in funding for the first-year base period of the five-year contract being solicited under Solicitation No. 36C241119Q0003, the solicitation at issue in the above-captioned bid protest.

<u>VA's December 17, 2018 Acquisition Planning Summary</u>

According to a document dated December 17, 2018, which presented a "summary" of the VA's "acquisition planning" (the December 17, 2018 Acquisition Planning Summary), the VA had previously conducted market research for the procurement of a "firm fixed price" contract for "Shredding White River Junction." The December 17, 2018 Acquisition Planning Summary does not state whether the market research addressed document shredding services for the White River Junction VA Medical Center or for the White River Junction CBOCs, or for both. According to the December 17, 2018 document, the VA determined that there were "10 SDVOSB and VOSB [veteran-owned small business] businesses" in the market that offered shredding services, and that "[t]hree of the ten Vet Biz vendors are listed on GSA Ebuy (Land Shark Shredding LLC, RW Lone Star Security, LLC and TrussCrane, Inc.)." According to the December 17, 2018 Acquisition Planning Summary, the VA issued a request for quotes on August 7, 2018 to the three SDVOSBs listed on GSA Ebuy, and protestor was the only contractor that responded. The VA subsequently cancelled the August 7, 2018 request for quotes[3] "because Land Shark Shredding's price in the amount of $[redacted] was $[redacted] or [redacted] percent higher than the IGCE amount of $[redacted]."[4]

The December 17, 2018 Acquisition Planning Summary also stated that on September 26, 2018, a "sources sought notice was posted on FBO [FedBizOpps]" and that "[c]apability statements were provided from the following vendors:"

Document Security Solutions (SDVOSB)
Land Shark Shredding (SDVOSB)
Secure Shred (SB) [Small Business]
Veteran Shredding (SDVOSB)

---

[3] In the protest currently before the court, the protestor does not challenge the VA's cancellation of the August 7, 2018 request for quotes.

[4] The July 19, 2018 IGCE memorandum indicated that: "**The grand total including option years is $**[redacted][.]" (emphasis in original).

Skip Pettit (SDVOSB – Email that he can partner with Shred It)

The "Sources Sought Notice" was attached to the December 17, 2018 Acquisition Planning Summary, and noted that it was "not a request for quotes. This request is solely for the purpose of conducting market research to enhance VHA's [Veterans Health Administration] understanding of market's offered services, capabilities and potential small business sources." The Sources Sought Notice also stated that the place of performance for the document shredding services would be the White River Junction VA Medical Center and White River Junction CBOCs.

The December 17, 2018 Acquisition Planning Summary concluded that, based on the "responses from the sources sought notice,"

> there are two[5] SDVOSB vendors that may be able to provide the services. It is unknown if the prices would be fair and reasonable due to the location of the vendors. A solicitation will be posted on FBO as a SDVOSB set aside and a fair and reasonable determination will be made prior to award.

Solicitation No. 36C241119Q0003

On December 19, 2018, the VA issued Solicitation No. 36C241119Q0003, the solicitation at issue in the above-captioned protest, for a contract for document destruction services for the White River Junction VA Medical Center and seven CBOCs associated with the White River Junction VA Medical Center, located throughout Vermont and New Hampshire. Solicitation No. 36C241119Q0003 stated, "the solicitation is issued as a request for quotation (RFQ)," and that "[t]his requirement is being issued as a Service Disabled Veteran Owned Small Business set aside. The associated NAICS code is 561990 with a size standard of $11Million."

Solicitation No. 36C241119Q0003 also stated:

> The Government intends to award a firm-fixed price award for 12 months **(04/01/2019-03/31/2020) with four (4) twelve month options.** The Contractor shall provide all labor, supervision, material, equipment, and travel to provide document destruction services for Government- provided documents, containing sensitive confidential and medical records at the VAMC [VA Medical Center] White River Junction and other clinics throughout VT as listed in the Performance Work Statement.

(capitalization and emphasis in original). The "Place of Performance is the White River Junction VA Medical Center, 215 North Main Street, White River Junction, VT 05009 and several VA Clinics through VT (see Performance Work Statement)."

---

[5] The December 17, 2018 Acquisition Planning Summary did not identify which two SDVOSB vendors may have been able to provide the services.

Solicitation No. 36C241119Q0003 provided that "[a]ward will be made to the best value, as determined to be the most beneficial to the Government." The solicitation also explained, under the section titled "Evaluation Process," that:

> Quotes shall be evaluated under FAR Part 13.106-2(b) -- Evaluation of Quotations or Offers. Therefore, the Government will not determine a competitive range, conduct discussions with all contractors, solicit final revised quotes, or use other techniques associated with FAR Part 15. The Contracting Officer will conduct a comparative evaluation of quotes in accordance with FAR 13.106-2 (b).

> The Government will award a contract resulting from this solicitation to the responsible quoter whose quote conforming to the solicitation will be most advantageous to the Government, price and other factors considered.

The three factors that would be used to evaluate quotes were price, past performance, and technical experience and capabilities.

Regarding pricing, according to the solicitation's "PERFORMANCE WORK STATEMENT," "[t]he Contractor shall provide 64-gallon, lockable, wheeled totes that have a slot in the top to accept all materials to be shredded," and "[t]he Contractor shall provide '36' tall front feed lockable consoles." (capitalization in original). The number of 64-gallon totes and 36'' tall consoles required, as well as the number of weekly pick-ups of shredding material the contractor would have to make, varied by location of the clinic, as follows:

> White River Junction VA Medical Center (provide approximately 30-40 totes & 30-35 consoles, pickup once a week)
> 215 North Main Street
> White River Junction VT, 05009

> White River Junction VA Medical Center Outer Bldgs. 4,6,7,9,37,58,59,60,62,63,66 & 67
> (provide 14 totes & 6 consoles, Pickup twice a month)

> Bennington CBOC (provide 2 consoles, pickup two times per month)
> 186 North Street
> Bennington, VT 05201

> Brattleboro CBOC (provide 1 tote & 2 consoles, pickup every 4 weeks)
> 71 GSP Drive
> Brattleboro, VT 05301

> Burlington Lakeside CBOC (provide 2 totes, pickup weekly)
> 128 Lakeside Avenue, Suite 260
> Burlington, VT 05401

Newport Outpatient Clinic (provide 1 tote, pickup every 4 weeks)
1734 Crawford Farm Road
Newport, VT 05855

Rutland CBOC (provide 2 consoles, pickup every 2 weeks)
232 West Street
Rutland, VT 05701

Keene Outpatient Clinic (provide 1 console, pickup every 4 weeks)
640 Marlboro Street, Route 101
Keene, NH 03431

Littleton CBOC (provide 4 consoles, pickup every 4 weeks)
264 Cottage Street
Littleton, NH 03561

The solicitation required the bidder to submit its pricing for 64-gallon totes and 36''
tall consoles and the scheduled pickups at the above-listed locations on a yearly basis in
the table below, which was included in the solicitation:

| Item # | Description- Base Year – 04/01/2019-03/31/2020 | Qty | Unit | Price | Amount |
|--------|---|---|---|---|---|
| 0001 | The contractor shall provide document destruction services in accordance with the Performance Work Statement. | 12 | MO | | |

| Item # | Description- Base Year – 04/01/2020-03/31/2021[6] | | | | Item #[7] |
|--------|---|---|---|---|---|
| 1001 | The contractor shall provide document destruction services in accordance with the Performance Work Statement. | 12 | MO | | |

---

[6] It appears as if Item # 1001 should have been "Description- Option 1– 04/01/2020-
03/31/2021," instead of "Description- Base Year –04/01/2020-03/31/2021."

[7] Likewise, it appears as if Item # should have been "Amount."

| Item # | Description- Option 2 – 04/01/2021-03/31/2022 | Qty | Unit | Price | Amount |
|--------|-----------------------------------------------|-----|------|-------|--------|
| 2001 | The contractor shall provide document destruction services in accordance with the Performance Work Statement. | 12 | MO | | |

| Item # | Description- Option 3 04/01/2022-03/31/2023 | Qty | Unit | Price | Amount |
|--------|---------------------------------------------|-----|------|-------|--------|
| 3001 | The contractor shall provide document destruction services in accordance with the Performance Work Statement. | 12 | MO | | |

| Item # | Description- Option 4 – 04/02/2023-04/01/2024 | Qty | Unit | Price | Amount |
|--------|-----------------------------------------------|-----|------|-------|--------|
| 4001 | The contractor shall provide document destruction services in accordance with the Performance Work Statement. | 12 | MO | | |

The solicitation stated that:

> Except when it is determined in accordance with FAR 17.206(b) not to be in the Government's best interests, the Government will evaluate offers for award purposes by adding the total price for all options to the total price for the basic requirement. Evaluation of options will not obligate the Government to exercise the option(s). The Government will evaluate prices for the option under FAR 52.217-8 by using last year's option prices to calculate the price for six months of effort, and adding that amount to the base and other option years to arrive at the total.

Responses to Solicitation No. 36C241119Q0003 were due by January 3, 2019, and were required to be submitted by email to the contracting officer, Tammy Davis.

In response to Solicitation No. 36C241119Q0003, the VA received four separate emails from potential bidders, including protestor, with questions regarding the solicitation. Protestor's email, dated December 26, 2018, included 11 questions regarding various topics, including price, subcontracting limitations, and past performance. On December 31, 2018, the VA issued "amendment A00001" to Solicitation No. 36C241119Q0003, extending the closing date from January 3, 2019 to January 11, 2019 at 12:00 p.m. EST. (capitalization in original). Amendment A00001 also stated that the VA would issue a second amendment with responses to the questions emailed in by potential bidders.

On January 4, 2019, the VA issued "Amendment A00002," which provided "responses to Contractor questions," including two pricing questions previously asked by protestor in its December 26, 2018 email, and relevant to the above-captioned protest. The first pricing question by protestor was:

> Is it safe to assume if an offeror bids a per container price for this solicitation, that has been accepted as fair and reasonable per the GSA Schedule, and that the VA has recently awarded in other shredding contracts – that said price per container will be considered inherently fair and reasonable and therefore competitive?

The VA responded in Amendment A00002 that, "No, this is an open market solicitation; price reasonableness shall be in accordance with FAR 13.106-3." The second pricing question was, "Was an IGCE performed and if so on what was it based?" Amendment A00002 provided in response that "Yes, Independent Government Cost Estimates are for official use only and not for public disclosure."

Protestor also had previously asked the VA in its December 26, 2018 email: "Is there a current contract for the work being solicited? If so, please provide that awarded contract number (NOT the incumbent GSA contractor number). Also please provide the name of the incumbent contractor and the contract amount." (capitalization in original) Amendment A00002 provided in response that:

> Yes, the requirement was split into two contracts as follows:

> VA241-14-F-1928 (WRJ CBOCS) Shred This Inc (SECURESHRED) - Awarded in the amount of $65,260.20 (total) for the Base and Four Option Years.

> VA241-14-F-0113 (White   River   Junction   -   Shred   This   Inc (SECURESHRED) – The contract amount total is $106,950 for the Base and Four Option Years.

Protestor also had previously asked the VA in its December 26, 2018 email "[i]s the level of effort being performed under the current contract fundamentally the same as what will be required to fulfill #36C24119Q0003?" Amendment A00002 responded "Yes."

Amendment A00002," also provided responses to questions from other potential offerors. For one of the questions, Question 4, a potential offeror asked:

> [W]ill assessments of the winning Contractor's compliance to Limitations on Subcontracting requirements be performed? If not, then how will the VA KNOW the winning contractor is in compliance with this law? If the VA does not evaluate and monitor this requirement, then the VA is running the risk of a Qui Tam Lawsuit after the first twelve months of this contract.

(capitalization in original).  The VA responded:

> No, it is not anticipated that the total contract amount will be greater than the simplified acquisition threshold of $250K. In accordance with 13 CFR 125.6 - In order to be awarded a full or partial small business set-aside contract with a value greater than the simplified acquisition threshold, a small business concern must agree that: it will not pay more than 50% of the amount paid by the government to it to firms that are not similarly situated. Any work that a similarly situated subcontractor further subcontracts will count towards the 50% subcontract amount that cannot be exceeded.

On January 11, 2019, the VA received only two proposals for Solicitation No. 36C241119Q0003, one from [redacted], an SDOVSB located in [redacted], Indiana, and one from protestor, located in Bowling Green, Kentucky. In [redacted]'s January 11, 2019 email to Contracting Officer Davis, to which [redacted]'s proposal was attached, [redacted] noted that it is not a document shredding business, but "handle[s] the [redacted] Account for your [VA] Boston VAMC contract- on year number 2" and that it was "partnering with [redacted] to propose a competitive bid for the shredding services at White River Junction." [redacted]'s proposal proposed a total price for the base year and the four option periods of "$[redacted]." (emphasis in original). According to the following tables included in [redacted]'s proposal, [redacted]'s price was:

| Item # | Description- Base Year – 04/01/2019-03/31/2020 | Qty | Unit | Price | Amount |
|--------|-----------------------------------------------|-----|------|-------|--------|
| 0001 | The contractor shall provide document destruction services in accordance with the Performance Work Statement. | 12 | MO | $[redacted] | $[redacted] |

| Item # | Description- Base Year – 04/01/2020-03/31/2021 | | | | Item # |
|--------|-----------------------------------------------|---|---|---|--------|

| 1001 | The contractor shall provide document destruction services in accordance with the Performance Work Statement. | 12 | MO | $[redacted] | $[redacted] |

| Item # | Description- Option 2 – 04/01/2021-03/31/2022 | Qty | Unit | Price | Amount |
|---|---|---|---|---|---|
| 2001 | The contractor shall provide document destruction services in accordance with the Performance Work Statement. | 12 | MO | $[redacted] | $[redacted] |

| Item # | Description- Option 3 04/01/2022-03/31/2023 | Qty | Unit | Price | Amount |
|---|---|---|---|---|---|
| 3001 | The contractor shall provide document destruction services in accordance with the Performance Work Statement. | 12 | MO | $[redacted] | $[redacted] |

| Item # | Description- Option 4 – 04/02/2023-04/01/2024 | Qty | Unit | Price | Amount |
|---|---|---|---|---|---|
| 4001 | The contractor shall provide document destruction services in accordance with the Performance Work Statement. | 12 | MO | $[redacted] | $[redacted] |

TOTAL                                                    $[redacted]

(capitalization and emphasis in original).

Also, on January 11, 2019, protestor sent an email to Contracting Officer Davis, which attached its proposal for Solicitation No. 36C241119Q0003. Protestor's proposal stated that it was a "Service Disabled Veteran Owned Small Business" and that its SDVOSB status was certified by the VA's Center for Verification and Employment. (capitalization and emphasis in original). Protestor's proposed total contract price was

"$[redacted]."  According  to  the  following  tables  included  in  protestor's  proposal, protestor's price for the base period and four option periods was:

| Item # | Description- Base Year - 04/01/2019-03/31/2020 | Qty | Unit | Price | Amount |
|---|---|---|---|---|---|
| 0001 | The contractor shall provide document destruction services in accordance with the Performance Work Statement. | 12 | MO | $[redacted] | $[redacted] |

| Item # | Description- Base Year - 04/01/2020-03/31/2021 | | | | Item # |
|---|---|---|---|---|---|
| 1001 | The contractor shall provide document destruction services in accordance with the Performance Work Statement. | 12 | MO | $[redacted] | $[redacted] |

| Item # | Description- Option 2 - 04/01/2021-03/31/2022 | Qty | Unit | Price | Amount |
|---|---|---|---|---|---|
| 2001 | The contractor shall provide document destruction services in accordance with the Performance Work Statement. | 12 | MO | $[redacted] | $[redacted] |

| Item # | Description- Option 3 04/01/2022-03/31/2023 | Qty | Unit | Price | Amount |
|---|---|---|---|---|---|
| 3001 | The contractor shall provide document destruction services in accordance with the Performance Work Statement. | 12 | MO | $[redacted] | $[redacted] |

| Item # | Description- Option 4 - 04/02/2023-04/01/2024 | Qty | Unit | Price | Amount |
|---|---|---|---|---|---|

| 4001 | The contractor shall provide document destruction services in accordance with the Performance Work Statement. | 12 | MO | $145,244.45 | $145,244.45 |
|------|---------------------------------------------------------------------------------------------------------------|----|----|------------|------------|

TOTAL                                                                    $[redacted]

(capitalization in original). Protestor's proposal also noted that "**We are 1 of only 3 GSA Certified SDVOSB Document Destruction Companies**," and that its "<u>Prices [were] Approved</u> by the General Services Administration, a division of the <u>United states [sic] Federal Government</u> under" the "Federal Supply Schedule – <u>SIN 51 507 Destruction Services</u>." (capitalization, emphasis, and underline in original).

On January 11, 2019, the same day that [redacted] and protestor submitted their proposals for Solicitation No. 36C24119Q003, the VA issued "Amendment A00003," which cancelled the solicitation and corrected the "response to question #4 from Amendment A00002." As noted above, in Question 4, a potential offeror had asked the VA:

> [W]ill assessments of the winning Contractor's compliance to Limitations on Subcontracting requirements be performed? If not, then how will the VA KNOW the winning contractor is in compliance with this law? If the VA does not evaluate and monitor this requirement, then the VA is running the risk of a Qui Tam Lawsuit after the first twelve months of this contract.

(capitalization in original). The VA responded:

> No, it is not anticipated that the total contract amount will be greater than the simplified acquisition threshold of $250K. In accordance with 13 CFR 125.6 - In order to be awarded a full or partial small business set-aside contract with a value greater than the simplified acquisition threshold, a small business concern must agree that: it will not pay more than 50% of the amount paid by the government to it to firms that are not similarly situated. Any work that a similarly situated subcontractor further subcontracts will count towards the 50% subcontract amount that cannot be exceeded.

Amendment A00003, however, restated Question 4 as "will assessments of the winning Contractor's compliance to Limitations on Subcontracting requirements be performed?" Amendment A00003 stated that "yes, Limitations of subcontracting are applicable." (capitalization in original). The VA explained in a January 11, 2019 internal memorandum, discussed below, that the "correction" to Question # 4 in Amendment A00003 "was issued for informational purposes only for reference on future solicitations for this requirement;

however, the question/answer does not have any impact on this solicitation," or "bearing on the determination for fair and reasonable pricing."

According to the VA's internal memorandum, documenting its rationale for cancelling Solicitation No. 36C24119Q0003, dated January 11, 2019:

> Because both quotes were more than [redacted] percent higher than the incumbent's pricing for the shredding services and more than [redacted] percent higher than the IGCE amount of $[redacted], neither price can be determined fair and reasonable. Because a reasonable price was unattainable due to the significantly high quotes, the technical and past performance were not evaluated and the solicitation was cancelled. An email was sent to both contractors on 1/11/2019 and an amendment A00003 was posted to FBO.gov with notice of cancellation.

The January 11, 2019 internal memorandum included the following table which compared protestor's and [redacted]'s prices for Solicitation No. 36C241119Q0003 to the July 19, 2018 IGCE memorandum.

| IGCE | Land Shark | Difference from IGCE $ | Difference from IGCE % | [redacted] | Difference from IGCE $ | Difference from IGCE % |
|---|---|---|---|---|---|---|
| | | | | | | |
| $[redacted] | $[redacted] | $[redacted] | [redacted]% | $[redacted] | $[redacted] | [redacted]% |
| $[redacted] | $[redacted] | $[redacted] | [redacted]% | $[redacted] | $[redacted] | [redacted]% |
| $[redacted] | $[redacted] | $[redacted] | [redacted]% | $[redacted] | $[redacted] | [redacted]% |
| $[redacted] | $[redacted] | $[redacted] | [redacted]% | $[redacted] | $[redacted] | [redacted]% |
| $[redacted] | $[redacted] | $[redacted] | [redacted]% | $[redacted] | $[redacted] | [redacted]% |
| $[redacted] | $[redacted] | $[redacted] | [redacted]% | $[redacted] | $[redacted] | [redacted]% |

(shading in original).

The January 11, 2019 internal memorandum included the following table that compared SecurShred's Task Orders VA241-14-F-1928 and VA241-14-F-0113:

| VA241-14-F-1928 | $ 65,260.20 | | |
|---|---|---|---|
| VA241-14-F-0113 | | $ 64,800.00 | Original award amount for B+4 |
| Base | $12,960.00 | | |
| P00001 | $23,021.82 | | |
| P00002 | $23,942.52 | | |
| P0003 | $23,942.52 | | |
| P00004 | ($859.38) | | |
| ***Missing opt 2 | $23,942.52 | | |
| | $106,950.00 | | New total with modifications |

*** Note – Task Order VA241-14-F-0013 [sic] is missing a modification for Option Year 2, assumed $23,942.52 for calculations.[8]

The January 11, 2019 internal memorandum also included the following table which compared protestor's and [redacted]'s pricing for Solicitation No. 36C241119Q0003 to the "WRJ [White River Junction] & CBOC Historical Pricing."[9]

| | WRJ & CBOC Historical Pricing | Difference bet Land Shark & Historical Pricing $ | Difference bet Land Shark & Historical Pricing % | | Difference bet [redacted] & Historical Pricing $ | Difference bet [redacted]& Historical Pricing % |
|---|---|---|---|---|---|---|
| Total | $172,210.20 | $[redacted] | [redacted]% | | $[redacted] | [redacted]% |

(capitalization, shading and spelling in original).

The January 11, 2019 internal memorandum provided that:

> The contracting officer does not have a reasonable expectation, based on market research, that two or more VOSBs listed as verified in VIP database are likely to submit offers and an award can be made at a fair and reasonable price; therefore, the requirement will be re-solicited as a small business set aside.

Also, on January 11, 2019, Contracting Officer Davis sent an email notifying protestor that its price of "$[redacted] is approximately [redacted] percent higher than the price we are currently paying." Contracting Officer Davis further noted in the email that "your pricing cannot be determined fair and reasonable," and that the "solicitation is cancelled and will be resolicited." Contracting Officer Davis also sent an email to [redacted] on January 11, 2018, notifying [redacted] that its submitted price of "$[redacted] is approximately [redacted] percent higher than the price we are paying on the current contract," and that, therefore, [redacted]'s "price cannot be determined fair

---

[8] The table comparing SecurShred's Task Orders did not include any headings or further explanations.

[9] The January 11, 2019 internal memorandum did not provide a definition for "Historical Pricing" or explain any explanation for the amount of $172,210.20 as the "Historical Pricing." As described below, in a March 8, 2019 internal memorandum section titled "**Comparison of quoted prices to historical prices found reasonable on previous purchases (FAR 13.106-3 (a)(2)(ii))**," Contracting Officer Davis explained that: "In 2013, VA awarded task orders VA241-14-F-1928 and VA241-14-F-0113 were awarded [sic] to Secure This, Inc. (SecureShed), [sic] a small business concern, under its GSA schedule contract for the provision of WRJ shredding services. The total value of the contracts was approximately $172,210.20." (emphasis in original).

and reasonable."[10] Contracting Officer Davis stated in her email to [redacted] that the "solicitation is cancelled and will be resolicited."

On January 14, 2019, the VA resolicited the same requirement for document shredding services at the White River Junction VA Medical Center and surrounding White River Junction clinics under Solicitation No. 36C24119Q0111, which was posted to the Federal Biz Opps website as a small business set-aside, not an SDVOSB set-aside. On January 16, 2019, protestor submitted an agency level protest of the VA's cancellation of the earlier solicitation,[11]  Solicitation No. 36C241119Q0003, challenging the agency's decision to cancel the solicitation and the agency's rejection of protestor's price "as not fair and reasonable."[12]

On February 13, 2019, Contracting Officer Davis sent her letter decision on protestor's January 16, 2019 agency level protest of the first solicitation, Solicitation No. 36C241119Q0003 to protestor. Contracting Officer Davis denied the protest, noting that the "solicitation was cancelled based on a reasonable basis; the price was not fair and reasonable and not the best value for the United States." Contracting Officer Davis stated in her letter:

> [T]he solicitation was cancelled based on the contracting officer's business judgement [sic] that the price was too high and fair and reasonable pricing, required by the Federal Acquisition Regulation, was not attainable. The price was evaluated in accordance with Federal Acquisition Regulation (FAR) 13.106-3(a)(2)(ii), Comparison of proposed prices found reasonable on previous purchases. The terms and conditions, quantities, and market and economic factors are not materially different than the last acquisition.

---

[10] As noted in the January 11, 2019 internal memorandum, the total price of [redacted]'s proposal was [redacted], and not [redacted]as indicated in Contracting Officer Davis' email.

[11] On January 21, 2019, protestor submitted its bid for the second solicitation, Solicitation No. 36C24119Q0111. Protestor does not challenge the second solicitation, Solicitation No. 36C24119Q0111. As noted above, protestor's challenge in the above-captioned protest relates solely to the first solicitation, Solicitation No. 36C241119Q0003. Facts regarding Solicitation No. 36C24119Q0111, however, have been included in this Opinion in order to present a timeline of events surrounding the VA's procurement process for document shredding services at the White River Junction VA Medical Center and surrounding CBOCs, at issue in this case.

[12] Protestor did not raise the Rule of Two argument at the agency level protest, because it was unaware of any other bidders. As indicated in its January 16, 2019 agency level protest, Land Shark stated "[w]e submitted the question via email on 11 January 2018 asking if there were any other bidders, and to date we have yet to receive a response. If there were other bidders, then the Rule of Two per the Supreme Court ruling in the Kingdomware case was satisfied, and an award should have been announced."

Contracting Officer Davis also noted that protestor's price was "also compared to the Independent Government Cost Estimate."

On February 19, 2019, the VA awarded a contract under the second solicitation, Solicitation No. 36C24119Q0111, to SecurShred in the "amount of $24,906.87 for the base year and $124,534.35 total for the base and four options." SecurShred is a small business and the incumbent contractor on Task Orders VA241-14-F-1928 and VA241-14-F-0113, the two previous task orders for document shredding services at the White River Junction VA Medical Center and surrounding White River Junction clinics.

On February 20, 2019, Don Gerard, Jr., the President and CEO of Land Shark Shredding emailed Contracting Officer Davis regarding the VA's evaluation of protestor's bid for the first solicitation, Solicitation No. 36C241119Q0003, stating that "[w]e will be protesting your action.[13]" Also, on February 20, 2019, Mr. Gerard also sent a second email to Contracting Officer Davis, asking whether protestor was the "ONLY SDVOSB bid you [the VA] received on Solicitation 36C24119Q0003, which by the way was a 100% Total SDVOSB set-aside??" (capitalization in original). On February 21, 2019, Contracting Officer Davis responded to Mr. Gerard's second February 20, 2019 email, stating:

> Land Shark Shredding, LLC was not the only quote received in response to solicitation 36C24119Q0003, the Government also received one quote from a non-shredding SDVOSB contractor. The quotes were not ranked and your quote was lower than the other price submitted. Award was not made because the price could not be determined fair and reasonable and was not the best value to the Government as required by the Federal Acquisition Regulation.

> Please note that Land Shark Shredding, LLC's price of $[redacted] is $[redacted] higher than the awardee's price of $124,534.35.[14]

On February 22, 2019, protestor's counsel in the above-captioned protest submitted a prefiling notice of a bid protest to Clerk of the Court for the United States Court of Federal Claims, indicating that Land Shark Shredding intended to protest the first solicitation, Solicitation No. 36C241119Q0003, and the second solicitation, Solicitation No. 36C24119Q0111, in this court "on or about February 28, 2019." Protestor, however,

---

[13] Mr. Gerard did not specify in the email when Land Shark Shredding would be protesting the VA's action regarding Solicitation No. 36C241119Q0003, nor whether Land Shark Shredding would be filing a protest at the United States Government Accountability Office or the United States Court of Federal Claims.

[14] The "awardee's price" of "$124,534.35" referred to in Contracting Officer Davis's February 21, 2019 email corresponds with SecurShred's price of $124,534.35 for Solicitation No. 36C24119Q0111, the solicitation which the agency issued after cancelling Solicitation No. 36C24119Q0003.

did not file a bid protest in this court of both Solicitation No. 36C241119Q0003 and Solicitation No. 36C24119Q0111 by February 28, 2019. Protestor filed the above-captioned protest regarding only the first solicitation, Solicitation No. 36C24119Q0003, on April 8, 2019.

On March 1, 2019, Contracting Officer Davis sent protestor a letter which stated that her February 19, 2019 decision on protestor's January 16, 2019 agency level protest regarding the first solicitation, Solicitation No. 36C241119Q0003, was "withdrawn" and "The protest is dismissed in its entirety because the Agency is taking corrective action." According to the March 1, 2019 letter, the agency's corrective action included the following: "[t]he CO will reassess the decision to not make award under 36C24119Q0003 and subsequent cancellation of 36C24119Q0003. This reassessment will include, but is not limited to, further review of the procurement record and the quotes submitted in response to 36C24119Q0003."

On March 6, 2019, the VA cancelled the award made to SecurShred under the second solicitation, Solicitation No. 36C24119Q0111, and notified protestor, via email, of the cancellation on March 7, 2019. According to defendant's timeline of events regarding the VA's procurement for document shredding services at issue in this protest, attached to defendant's cross-motion for judgment on the administrative record, the "agency cancelled the solicitation [No. 36C24119Q0111] and terminated the award because it decided to take corrective action." Defendant did not further explain the reason for the agency's decision to take corrective action, nor did the defendant provide details regarding the corrective action for Solicitation No. 36C24119Q0111. Also, according to defendant's timeline of events, following the cancellation of the second solicitation, Solicitation No. 36C24119Q0111, the VA awarded a short-term 3-month, base period, bridge task order to SecurShred under SecurShred's GSA contract, GS-03F-0004V, to run from April 1, 2019 through June 30, 2019. The amount under the bridge task order was for $6,270.04. The bridge task order also included a 3-month option period, which, if exercised by the agency, could extend SecurShred's performance until September 30, 2019. Performance began under the bridge task order on April 1, 2019 and appeared, at the time of the oral argument in the above-captioned protest, to be on-going. Further, according to defendant's timeline of events,

> [o]nce the protest is resolved at the COFC [United States Court of Federal Claims], VA will be resoliciting for its requirement. The re-solicitation will not be as an SDVOSB set-aside. VAAR [Veterans Affairs Acquisition Regulation] 852.215-70, SDVOSB and VOSB Evaluation Factors, and VAAR 852.215-71, Evaluation Factor Commitments, will be included in the solicitation in accordance with VAAR 813.003-70.

Protestor does not challenge the VA's decision to award a bridge task order to SecurShred in the above-captioned protest. As previously noted, in the above-captioned bid protest protestor is only protesting the first solicitation, Solicitation No. 36C24119Q0003.

The VA's March 8, 2019 Corrective Action for Solicitation No. 36C24119Q0003

On March 8, 2019, Contracting Officer Davis issued her reassessment decision "Not to Make Award under Solicitation 36C24119Q0003" in an internal VA memorandum. (capitalization in original). In the March 8, 2019 internal memorandum, Contracting Officer Davis noted that she had relied "in part" on the July 19, 2018 IGCE memorandum when making her initial determination that "the quotes received in response to solicitation 36C24119Q0003 were not fair and reasonable and did not represent the best value to the government." Contracting Officer Davis stated that "[u]pon review of the record during this corrective action, the CO determined that the IGCE was flawed." Contracting Officer Davis, however, did not explain why the agency believed the July 19, 2018 IGCE memorandum was flawed, nor did she provide any other details regarding the July 19, 2018 IGCE memorandum.

As part of her reassessment, Contracting Officer Davis reevaluated protestor's price, without reference to the flawed July 2018 IGCE and concluded, once more, that protestor's price could not be determined to be "fair and reasonable," and affirmed her initial decision to cancel Solicitation No. 36C24119Q0003. Contracting Officer Davis detailed four reasons why protestor's price was not "fair and reasonable" in the March 8, 2019 internal memorandum. First, under the section titled: "**Comparison of quoted prices received in response to the solicitation (FAR 13.106-3 (a)(1))**" Contracting Officer Davis explained that:

> [redacted]'s quote is $[redacted] or [redacted]% more than Land Shark Shredding's quote. In addition, Land Shark's quote is $[redacted] or [redacted]% more than what it had quoted five months earlier for the same exact requirement. Land Shark increased its pricing despite the fact that it had been made aware that its previously quoted price was higher than expected and led to the cancellation of the procurement.[15] Although the pricing offered by Land Shark Shredding and [redacted] is within an approximate [redacted] percent range of each other, the pricing submitted is significantly higher than historical pricing for these same services and significantly higher than prices paid for similar services at other VAMCs in New England.

(emphasis in original). Contracting Officer Davis also noted in the March 8, 2019 internal memorandum that:

---

[15] As previously discussed, protestor had submitted a proposal with a price of $[redacted] in response to the VA's August 7, 2018 request for quotes for document shredding services for the White River Junction Medical Center and White River Junction CBOCs. The VA cancelled the August 7, 2018 request for quotes "because Land Shark Shredding's price in the amount of $[redacted] was $[redacted] or ~[redacted] percent higher than the IGCE amount of $[redacted]."

Land Shark Shredding, LLC is a shredding contractor based in Kentucky. In its quote document titled Vendor Comments, Land Shark Shredding states that it intends to self-perform all contract work; however, it also states that it reserves the right to subcontract and then goes on to describe, over two pages, how the limitations of subcontracting are applicable. The quote states that "the SDVOSB bidder must fairly compensate any non-similarly situated subcontractor, and then double that figure to be in compliance with 13 CRF [sic] 125.6. That means the bid of an SDVOSB entity adhering to the requirement of 13 CFR 125.6 will be higher than those of other bidders who do not understand the law, or elect to not follow the law." This language seemingly provides an explanation as to why Land Shark Shredding's pricing is significantly higher than historical pricing and that is, it is doubling its prices so that it could subcontract the work, should it need to, and still be compensated fairly. This does not explain why its current pricing is [redacted]% higher than the amount it quoted for the same services five months ago. There is no discernible reason why Land Shark's pricing would increase 55.97% in a five-month period and further supports the CO's finding that the pricing offered is unreasonable.

Second, under the section titled: "**Comparison of quoted prices to historical prices found reasonable on previous purchases (FAR 13.106-3 (a)(2)(ii))**," Contracting Officer Davis explained that:

In 2013, VA awarded task orders VA241-14-F-1928 and VA241-14-F-0113 were awarded [sic] to Secure This, Inc. (SecureShed), [sic] a small business concern, under its GSA schedule contract for the provision of WRJ shredding services. The total value of the contracts was approximately $172,210.20. Land Shark Shredding, LLC submitted a quote in the amount of $[redacted], which is $[redacted] or [redacted]% higher than historical pricing paid for similar shredding services. [redacted] submitted a quote in the amount of $[redacted] which is $[redacted] or [redacted]% higher than historical pricing paid for similar shredding services.

(emphasis in original). Contracting Officer Davis stated that she "cannot find pricing that is [redacted]% and [redacted]%, respectively, more than historical pricing paid for a similar shredding requirement with a smaller scope to be fair and reasonable offering best value to the agency."

Contracting Officer Davis acknowledged that the two previous task orders to SecurShred did not cover the exact same scope of work as the solicitation at issue in the above-captioned case. Contracting Officer Davis explained that each of Task Orders VA241-14-F-1928 and VA241-14-F-0113 "contains a larger scope than the current requirement," under Solicitation No. 36C24119Q0003. According to Contracting Officer Davis, because SecurShred's two task orders contained a larger scope of work, it was "reasonable for the CO to expect that the reduced scope would result in a reduction in price for the current requirement." Contracting Officer Davis also acknowledged that the

incumbent's prices for Task Orders VA241-14-F-1928 and VA241-14-F-0113, which were submitted in 2013, "may increase annually leading to an increase in price for the current requirement." To account for this potential price increase, Contracting Officer Davis provided "adjusted historical pricing" for SecurShred's two task orders in her March 8, 2019 internal memorandum, explaining that:

> An increase of 1.6% per year based on the last option year (2017-2018) of each of the task orders totals $180,654.76 for the current requirement. This is an overall increase of $8,444.56. The 1.6% increase is based on historical consumer price index annual averages over the past 10 years from the bls.gov website.

Contracting Officer Davis then stated that "[e]ven if the reduced scope led to no correlating reduction in price, and even with a 1.6% annual increase, [redacted]'s quote is $[redacted] or [redacted]% more than the adjusted historical pricing, and Land Shark Shredding's quote is $[redacted] or [redacted]% more than adjusted historical pricing." Contracting Officer Davis concluded that she "cannot find pricing that is [redacted]% and [redacted]%, respectively, more than the adjusted historical pricing paid for a similar shredding requirement with a smaller scope to be fair and reasonable offering best value to the agency."

Third, under the section titled: "**Comparison of quoted prices to prices paid by other VAMCs in the same region for the same/similar services (FAR 13.106-3 (a)(2)(ii))**," Contracting Officer Davis compared protestor's price for Solicitation No. 36C24119Q0003 to five "other VISN[16] 1 contracts for shredding services," which were all being performed by small-business contractors, not SDVOSB contractors. (emphasis in original). Contracting Officer Davis explained that she used the highest quoted rates from the "VISN 1 Shredding Contracts" when comparing the VISN 1 shredding contracts prices to protestor's prices for Solicitation No. 36C24119Q0003. Contracting Officer Davis included the following table in her March 8, 2019 internal memorandum, which displayed the "anticipated total annual amount for the WRJ VAMC requirement" based on rates pulled from "VISN 1 Shredding Contracts."

| Using Highest rates from VISN 1 Shredding Contracts | Equipment | Quantity | Frequency | Rate | Total Annual Rate |
|---|---|---|---|---|---|
| Shedding WRJ Main Campus | Console | 35 | WK | $ 8.31 | $ 15,124.20 |
| Shedding WRJ Main Campus | 64 Gallon | 40 | WK | $ 11.04 | $ 22,963.20 |

---

[16] The March 8, 2019 internal memorandum does not define "VISN," nor does the administrative record in the above-captioned case define "VISN." It appears that VISN is an acronym for Veterans Integrated Service Network.  VISN 1 refers to the VA's New England Healthcare System. See https://www.newengland.va.gov/

| Outer buildings | Console | 6 | 2 WK | $ 8.31 | $ 1,296.36 |
|---|---|---|---|---|---|
| Outer buildings | 64 Gallon | 14 | 2 WK | $ 11.04 | $ 4,018.56 |
| Bennington | Console | 2 | 2 WK | $ 36.00 | $ 1,872.00 |
| Brattleborro | Console | 2 | 4 WK | $ 36.00 | $ 936.00 |
| Brattleborro | 64 Gallon | 1 | 4 WK | $ 36.00 | $ 468.00 |
| Burlington | 64 Gallon | 2 | WK | $ 36.00 | $ 3,744.00 |
| Newport | 64 Gallon | 1 | 4 WK | $ 36.00 | $ 468.00 |
| Rutland | Console | 2 | 2 WK | $ 36.00 | $ 1,872.00 |
| Keene | Console | 1 | 4 WK | $ 36.00 | $ 468.00 |
| Littleton | Console | 4 | 4 WK | $ 36.00 | $ 1,872.00 |
| | | 110 | | | $ 55,102.32 |

Contracting Officer Davis concluded that:

> Based on these rates, the anticipated total annual amount for the WRJ [White River Junction] VAMC requirement would be $55,102.32 per year. Land Shark Shredding, LLC's annual price of $[redacted] exceeds this amount by $[redacted] or [redacted]%.

> Based on this comparison, the CO cannot find the pricing quoted by Land Shark to be fair and reasonable offering best value to the agency.

Fourth, under the section titled: "**Pricing received exceeds available funding for this procurement**," Contracting Officer Davis stated that "[t]he government has $35,000.00 of available funding for the 12-month base period. (emphasis in original). Land Shark Shredding quoted $[redacted] for the base period and [redacted] quoted $[redacted] for the base period. Both quotes received exceed available funds, and as such, the VA cannot award a contract that exceeds available funding."[17]

Contracting Officer Davis concluded the March 8, 2019 internal memorandum by stating:

> It is my determination that, based on the above analysis, the pricing offered by [redacted] and Land Shark Shredding cannot be determined fair and reasonable and does not represent the best value to the government. Furthermore, both quotes exceed available funding for the base period. Because I did not receive fair and reasonable pricing in response to solicitation 36C24119Q0003 and because both quotes exceed available funding, my determination remains the same that award cannot be made and solicitation 36C24119Q0003 should be cancelled.

---

[17] Although it strikes the court as odd that the agency would only allocated $35,000.00 in funding for the shredding contract, when the agency awarded two task orders to SecurShred in 2013 for more than $60,000.00 each, the agency is entitled to make funding decisions as it sees fit.

On March 15, 2019, Contracting Officer Davis sent protestor an email that she was reaffirming her decision not to make an award under Solicitation No. 36C24119Q0003 and to cancel the solicitation. Contracting Officer Davis explained in the email that

> the pricing offered in response to solicitation 36C24119Q0003 cannot be determined fair and reasonable and does not represent the best value to the government. Furthermore, the quotes received exceed available funding for the base period. Because I did not receive fair and reasonable pricing in response to solicitation 36C24119Q0003 and because both quotes exceed available funding, my determination remains the same, that award cannot be made and solicitation 36C24119Q0003 should be cancelled.

Procedural History

On April 8, 2019, protestor filed its original complaint in the above-captioned protest, challenging the VA's cancellation of the first solicitation, Solicitation No. 36C24119Q0003, and the VA's recompetition for the same document shredding services at the White River Junction VA Medical Center and surrounding White River Junction clinics under Solicitation No. 36C24119Q0111, which also was cancelled by the VA. The court held an initial hearing with the parties on April 10, 2019, during which time protestor indicated to the court that it no longer intended to pursue its challenge regarding the VA's issuance and subsequent cancellation of Solicitation No. 36C24119Q0111. On that same day, April 10, 2019, protestor filed an amended complaint, removing its challenge to Solicitation No. 36C24119Q0111 and narrowing the amended complaint to solely challenge the VA's cancellation of Solicitation No. 36C24119Q0003.

In its amended complaint, protestor challenges the VA's cancellation of Solicitation No. 36C24119Q0003. According to the protestor, it was "one of two SDVOSB" offerors which submitted "technically acceptable proposals" for Solicitation No. 36C24119Q0003. Protestor alleges that its price was lower than the other SDVOSB's bid price, and, therefore, "had the VA properly evaluated the original proposal for both LSS [Land Shark Shredding] and the second SDVOSB," protestor "would have been awarded the contract." Protestor alleges that "[t]he VA arbitrarily and capriciously cancelled Solicitation No. 36C24119Q0003, a Service Disabled Veteran Owned Small business (SDVOSB) set-aside, despite getting two SDVOSB bids that were fair and reasonable." Protestor alleges in the section of the amended complaint "RELIEF SOUGHT," that

> [t]he VA's procurement decision to cancel Solicitation No. 36C24119Q0003 lacked a rational basis and ignored the VA Directive issued after the Supreme Court's Kingdomware decision. The Contracting Officer ignored the cascading evaluation scheme in the Solicitation and the VA's stated goal of awarding a contract to a qualified SDVOSB or VOSB. The VA CO did not evaluate the offers in an impartial manner, in violation of FAR 13.106-2. She also did not consider LSS's offer in light of Congressional mandates, and

other applicable FARS referenced in the solicitation: FAR 19.1401(b) and FAR 19.1405(c)[.]

(capitalization in original).

Protestor raises two counts in the amended complaint. Count I is captioned: "THE CO'S DETERMINATION THAT LSS'S PRICE WAS UNREASONABLE LACKED A RATIONAL BASIS, WAS ARBITRARY AND CAPRICIOUS, AND INVOLVED A VIOLATION OF REGULATION OR PROCEDURE." (capitalization in original).  According to Count I, "[t]he decision to not award the contract to LSS because [sic] violates Congressional intent, the Supreme Court's Rule of Two doctrine, VA directives and the FAR." Count I also alleges that:

The basis of the VA's evaluation of Land Shark's proposal was supposed to be based on whether the proposer is a SDVOSB or VOSB or will employ subcontractors who are SDVOSB or VOSB, technical capability, past performance, and price. LSS is an SDVOSB, the VA found that LSS' proposal was technically acceptable, LSS's past performance reviews are all positive, and Land Shark's prices have been deemed to be fair and reasonable. Thus, the VA was required to fully evaluate the offers and award the contract to an SDVOSB.

Count II is titled:

VA's EVALUATION OF PROPOSALS[18] WAS NOT CONSISTENT WITH THE TERMS OF THE SOLICITATION AND WAS THEREFORE UNREASONABLE, LACKED A RATIONAL BASIS, WAS ARBITRARY AND CAPRICIOUS, AND INVOLVED A VIOLATION OF REGULATION OR PROCEDURE.

(capitalization in original). Count II alleges that the contracting officer notified protestor that "[a]ward was not made because the price could not be determined to be fair and reasonable and was not the best value to the Government as required by the Federal Acquisition Regulation." (internal quotation marks omitted). Count II also alleges that Solicitation No. 36C24119Q0003 "incorporated Clause 52.212-2 Basis of Award," and contained "the full-text clause VAAR 852.219-10 Service-Disabled Veteran Owned and Veteran Owned Small Business Evaluation Factors (July 2016)(DEVIATION)." (capitalization and spacing in original).

Count II states that the

---

[18] It is not clear from the amended complaint why protestor is referring to multiple proposals under Count II. Count II appears to only discusses protestor's proposal for Solicitation No. 36C24119Q0003.

VA was to use the evaluation process of FAR 13.106-2(b) Evaluation of quotations or offers that provides, "The contracting officer has broad discretion in fashioning suitable evaluation procedures. The procedures prescribed in parts 14 (bidding) and 15 (contract negotiations) are not mandatory. At the contracting officer's discretion, one or more, but not necessarily all, of the evaluation procedures in part 14 or 15 may be used."

Count II states:

This is the only outcome if the VA evaluates the proposals in accordance with the evaluation factors and basis of award in the Solicitation. Because the VA did not evaluate the proposals in accordance with the terms of the Solicitation, its award determination for the revised solicitation lacked a rational basis.

Protestor seeks the following relief in its amended complaint:

A. Issue a declaratory judgment on its protest that the VA's actions making the procurement decisions were arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law and regulation;

B. Issue a declaratory judgement that PL 109-461 as codified in 38 USCA [§] 8127 (d) and the Supreme Court's decision in Kingdomware limits the Contracting Officer's discretion in determining that a SDVOSB's offered price is not at a "fair and reasonable price that offers best value to the United States" for the purpose of canceling a solicitation after bid or proposal submission; 38 U.S.C.A. § 8127 (West) ("the word "shall" usually connotes a requirement.")[;] Kingdomware Techs., Inc. v. United States, 136 S. Ct. 1969, 1977, 195 L. Ed. 2d 334 (2016)[;]

C. Issue a declaratory judgment on its protest that the VA's cancellation of the Solicitation was in violation of applicable procurement laws and regulations;

D. Order the VA to reverse the cancellation of the solicitation and award the contract for White River Junction Medical Center paper destruction in Solicitation No. 36C24119Q0003 to LSS;

E. Order the VA to pay LSS damages in the amount of its bid preparation and proposal costs; and

F. Any other monetary and injunctive relief the Court determines is appropriate.

Based on the schedule agreed to by the parties, protestor filed a motion for judgment on the administrative record. Defendant then filed a combined motion to dismiss

the protest for failure to state a claim and for lack of subject-matter jurisdiction. Defendant also combined with its motion to dismiss, a cross-motion for judgment on the administrative record, arguing that the protest "fails on the merits." Protestor responded to defendant's motion to dismiss and defendant's cross-motion for judgment on the administrative record, and also filed its reply in support of its motion for judgment on the administrative record, following which defendant filed a reply. Oral argument on the parties' motions subsequently was held.

## DISCUSSION

Defendant in the protest currently under review alleges that because protestor in the above-captioned protest "did not have a substantial chance of receiving an award" under Solicitation No. 36C241119Q0003, protestor lacks standing to pursue this protest. Defendant argues that "Land Shark lacks standing to bring this protest because it never had a substantial chance of being awarded the contract, as its pricing exceeds available funding for this procurement." Protestor argues that it has standing to bring the above-captioned protest because "[p]rotestor was an actual bidder and he [sic] continues to possess a direct economic interest in the outcome of this case."

It is well established that "'subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.'" Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)). "[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428 (2011); see also Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." (citing Arbaugh v. Y & H Corp., 546 U.S. at 514)); Special Devices, Inc. v. OEA, Inc., 269 F.3d 1340, 1342 (Fed. Cir. 2001) ("[A] court has a duty to inquire into its jurisdiction to hear and decide a case." (citing Johannsen v. Pay Less Drug Stores N.W., Inc., 918 F.2d 160, 161 (Fed. Cir. 1990))); View Eng'g, Inc. v. Robotic Vision Sys., Inc., 115 F.3d 962, 963 (Fed. Cir. 1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not."). "The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." Arbaugh v. Y & H Corp., 546 U.S. at 506; see also Hymas v. United States, 810 F.3d 1312, 1317 (Fed. Cir. 2016) (explaining that a federal court must satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case); Cent. Pines Land Co., L.L.C. v. United States, 697 F.3d 1360, 1364 n.1 (Fed. Cir. 2012) ("An objection to a court's subject matter jurisdiction can be raised by any party or the court at any stage of litigation, including after trial and the entry of judgment." (citing Arbaugh v. Y & H Corp., 546 U.S. at 506)); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1346 (Fed. Cir. 2008) ("[A]ny party may challenge, or the court may raise sua sponte, subject matter jurisdiction at any time." (citing Arbaugh v. Y & H Corp., 546 U.S. at 506; Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1127 (2005); and Fanning, Phillips

& Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998))); Pikulin v. United States, 97 Fed. Cl. 71, 76, appeal dismissed, 425 F. App'x 902 (Fed. Cir. 2011).  In fact, "[s]ubject matter jurisdiction is an inquiry that this court must raise *sua sponte*, even where . . . neither party has raised this issue."  Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings, 370 F.3d 1354, 1369 (Fed. Cir.) (citing Textile Prods., Inc. v. Mead Corp., 134 F.3d 1481, 1485 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir.), cert. denied, 525 U.S. 826 (1998)), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. granted in part sub. nom Lab. Corp. of Am. Holdings v. Metabolite Labs., Inc., 546 U.S. 975 (2005), cert. dismissed as improvidently granted, 548 U.S. 124 (2006).

This court has jurisdiction to hear bid protests pursuant to 28 U.S.C. § 1491(b)(1) (2018) of the Tucker Act, which provides that this court has

> jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

28 U.S.C. § 1491(b)(1); see also Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1359 (Fed. Cir. 2009). The Administrative Dispute Resolution Act of 1996, codified at 28 U.S.C. § 1491(b)(1)–(4), amended the Tucker Act to establish a statutory basis for bid protests in the United States Court of Federal Claims. See Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1330–32 (Fed. Cir. 2001).

The Tucker Act grants the United States Court of Federal Claims "jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(a)(1). In order to have standing to sue as an "interested party" under this provision, a disappointed bidder must show that it suffered competitive injury or was "prejudiced" by the alleged error in the procurement process. See Todd Constr., L.P. v. United States, 656 F.3d 1306, 1315 (Fed. Cir. 2011) (To prevail, a bid protester must first "'show that it was prejudiced by a significant error' (i.e., 'that but for the error, it would have had a substantial chance of securing the contract).'" (quoting Labatt Food Serv., Inc. v. United States, 577 F.3d 1375, 1378, 1380 (Fed. Cir. 2009)); Blue & Gold Fleet, L.P. v. United States, 492 F.3d at 1317; see also Sci. Applications Int'l Corp. v. United States, 108 Fed. Cl. 235, 281 (2012); Linc Gov't Servs., LLC v. United States, 96 Fed. Cl. 672, 693 (2010) ("In order to establish standing to sue, the plaintiff in a bid protest has always needed to demonstrate that it suffered competitive injury, or 'prejudice,' as a result of the allegedly unlawful agency decisions." (citing Rex Serv. Corp. v. United States, 448 F.3d at 1308; Statistica, Inc. v. Christopher, 102 F.3d 1577, 1580–81 (Fed. Cir. 1996); Vulcan Eng'g Co. v. United States, 16 Cl. Ct. 84, 88 (1988); Morgan Bus. Assocs., Inc. v. United States, 223 Ct. Cl. 325, 332 (1980))). In order to establish what one Judge on this court has called "allegational prejudice" for the purposes of standing, the bidder must show that there was a "substantial chance" it would have received the contract award, but for the alleged procurement error.

See Linc Gov't Servs., LLC v. United States, 96 Fed. Cl. at 675; Hyperion, Inc. v. United States, 115 Fed. Cl. 541, 550 (2014) ("The government acknowledges that proving prejudice for purposes of standing merely requires "allegational prejudice," as contrasted to prejudice on the merits . . . ."); Bannum, Inc. v. United States, 115 Fed. Cl. 148, 153 (2014); see also Bannum, Inc. v. United States, 404 F.3d 1346, 1358 (Fed. Cir. 2005); Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1331 (Fed. Cir.), reh'g denied (Fed. Cir. 2004); Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2003); Statistica, Inc. v. Christopher, 102 F.3d at 1581; Archura LLC v. United States, 112 Fed. Cl. 487, 497 (2013); Lab. Corp. of Am. v. United States, 108 Fed. Cl. 549, 557 (2012). Because standing is a jurisdictional issue, this showing of prejudice is a threshold issue. See Corus Grp. PLC. v. Int'l Trade Comm'n, 352 F.3d 1351, 1357 (Fed. Cir. 2003); Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1370 (Fed. Cir. 2002).

    In the context of a pre-award bid protest,[19] the United States Court of Appeals for the Federal Circuit has determined that to show the requisite "direct economic interest," and, therefore, to be an "interested party" under the Tucker Act, the protestor has to have suffered a "'non-trivial competitive injury which can be redressed by judicial relief.'" See Orion Tech., Inc. v. United States, 704 F.3d 1344, 1348 (Fed. Cir. 2013) (quoting Weeks Marine, Inc. v. United States, 575 F.3d at 1362–63); see also COMINT Sys. Corp. v. United States, 700 F.3d at 1383 n.7 ("[I]n Weeks Marine this court specifically held that the 'non-trivial competitive injury' standard was applicable to 'a pre-award protest.'" (quoting Weeks Marine, Inc. v. United States, 575 F.3d at 1362)) (emphasis in original); MVS USA, Inc. v. United States, 111 Fed. Cl. 639, 647 (2013); Miles Constr., LLC v. United States, 108 Fed. Cl. at 797. This is a lower standard than the "substantial chance" standard used in post-award bid protests, but still requires a "showing of some prejudice." Orion Tech., Inc. v. United States, 704 F.3d at 1348-49 (quoting Weeks Marine, Inc. v. United States, 575 F.3d at 1362) (emphasis in original).

    As explained by the United States Court of Federal Claims in Digitalis Education Solutions, Inc. v. United States:

> Only an "interested party" has standing to challenge a contract award. Rex Serv. Corp. v. United States, 448 F.3d 1305, 1307 (Fed. Cir. 2006). An interested party is an actual or prospective bidder whose direct economic interest would be affected by the award of the contract. Id. Thus, a party must show that it is 1) an actual or prospective bidder and 2) that it has a direct economic interest. "[I]n order to be eligible to protest, one who has not actually submitted an offer must be expecting to submit an offer prior to the closing date of the solicitation." MCI Telecomms. Corp. v. United States, 878 F.2d 362, 365 (Fed. Cir. 1989). To prove a direct economic interest, a party must show that it had a "substantial chance" of winning the contract. Rex Serv., 448 F.3d at 1308.

---

[19] The court notes that protestor's bid protest complaint specifically refers to the above-captioned protest as a pre-award bid protest.  Protestor's counsel reiterated that protestor believes the above-captioned protest is a pre-award bid protest at oral argument.

Digitalis Educ. Solutions, Inc. v. United States, 664 F.3d at 1384; see also Am. Fed'n of Gov't Emps. v. United States, 258 F.3d 1294, 1302 (Fed. Cir. 2001), cert. denied, 534 U.S. 113 (2002); Centech Grp., Inc. v. United States, 78 Fed. Cl. 496, 503-504 (2007).

As noted above, Land Shark Shredding argues that "[p]rotestor was an actual bidder and he [sic] continues to possess a direct economic interest in the outcome of this case." Defendant notes that protestor "does nothing to meet its burden of showing that it had a substantial chance of receiving an award." According to defendant:

> As reflected in the agency's purchase request, the amount available for the 12 month base period for the purchase of shredding services was $35,000.00. Land Shark's quote for the twelve month base period, however, was over four times that amount at $[redacted]. As the VA stated in its corrective action memorandum "the VA cannot award a contract that exceeds available funding."

(internal reference omitted).

Under the section titled: "**Pricing received exceeds available funding for this procurement**," in the March 8, 2019 internal memorandum Contracting Officer Davis stated that "[t]he government has $35,000.00 of available funding for the 12-month base period. Land Shark Shredding quoted $[redacted] for the base period and [redacted] quoted $[redacted] for the base period. Both quotes received exceed available funds, and as such, the VA cannot award a contract that exceeds available funding." (emphasis in original). Contracting Officer Davis concluded in the March 8, 2019 internal memorandum by stating:

> It is my determination that, based on the above analysis, the pricing offered by [redacted] and Land Shark Shredding cannot be determined fair and reasonable and does not represent the best value to the government. Furthermore, both quotes exceed available funding for the base period. Because I did not receive fair and reasonable pricing in response to solicitation 36C24119Q0003 and because both quotes exceed available funding, my determination remains the same that award cannot be made and solicitation 36C24119Q0003 should be cancelled.[20]

---

[20] In the March 8, 2019 internal memorandum Contracting Officer Davis also stated that:

> [T]he anticipated total annual amount for the WRJ [White River Junction] VAMC requirement would be $55,102.32 per year. Land Shark Shredding, LLC's annual price of $[redacted] exceeds this amount by $[redacted] or [redacted]%.

> Based on this comparison, the CO cannot find the pricing quoted by Land Shark to be fair and reasonable offering best value to the agency.

Protestor responds that the level of funding available to the VA is irrelevant as to whether protestor has standing to bring this protest. Under the section in protestor's response to defendant's motion to dismiss titled: "Whether Land Shark lacks standing to challenge the VA's decision not to award a contract for the December 2018 solicitation where its price quote exceeded available funding?" protestor states:

> The government attorneys argue,"[sic] The United States' decision to cancel the solicitation for shredding services at the White River Junction Department of Veterans Affairs (VA) Medical Center was reasonable where both of the quotes that the Government received greatly exceeded available funding and were properly determined to be unreasonable under 48 C.F.R. § 13.106-3."

> There is not one word or mention found in 38 U.S.C. §8127 [sic] or 8128 that the level of funding available is a determining factor in whether the Rule of Two shall be applied which is what the Protestor's claim is about. The Defendant's motion is lacking in analysis of the Rule of Two and focuses primarily on the alleged lack of funding.

The court addresses protestor's arguments regarding 38 U.S.C. § 8127, and the Rule of Two below in the analysis of the defendant's arguments regarding failure to state a claim. As it relates to the issue of standing, if the government had the right to determine the level of funding was $35,000.00 and Land Shark Shredding's offer was more than four times the funding level, Land Shark Shredding cannot demonstrate it had a substantial chance of being awarded the contract.

As explained by a Judge of this court in First Enterprise v. United States, "[i]t is beyond any doubt that agency officials have broad discretion in managing agency funds." First Enterprise v. United States, 61 Fed. Cl. 109, 119 (2004). This is consistent with the broad discretion generally afforded an agency in making procurement decisions. See, e.g., AgustaWestland N. Am., Inc. v. United States, 880 F.3d at 1332 ("Where, as here, a bid protester challenges the procurement official's decision as lacking a rational basis, we must determine whether 'the contracting agency provided a coherent and reasonable explanation of its exercise of discretion,' recognizing that 'contracting officers are entitled to exercise discretion upon a broad range of issues confronting them in the procurement process.'" (quoting Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332-33 (internal quotation marks and citation omitted))). The First Enterprise court also noted that "an agency has virtually a carte blanche right to decide the amount of funding it will spend on a given project." First Enterprise v. United States, 61 Fed. Cl. 109, (citing Sinha v. Veterans Administration, 768 F.2d 330, 332 (Fed. Cir. 1985), cert. denied, 475 U.S. 1014 (1986)) (emphasis in original). Therefore, the Contracting Officer was within her discretion to conclude in the March 8, 2019 internal memorandum that "[t]he government has $35,000.00 of available funding for the 12-month base period. Land Shark Shredding quoted $[redacted] for the base period and [redacted] quoted $[redacted] for the base period. Both quotes received exceed available funds, and as

such, the VA cannot award a contract that exceeds available funding."[21] Without submitting a bid that was within the budgeted amount of funding, protestor did not have a substantial chance of being awarded the contract, and protestor lacks standing to bring the above-captioned bid protest, and its protest complaint must be dismissed. See Todd Constr., L.P. v. United States, 656 F.3d at 1315.

Even, if protestor could establish standing, defendant seeks to dismiss protestor's complaint for failure to state a claim, pursuant to Rule 12(b)(6) of the United States Court of Federal Claims Rules (2019) (RCFC). Defendant asserts that "[t]o the extent Land Shark challenges the regulatory requirements regarding price fairness this challenge must be brought in district court under the APA," and should be dismissed by this court. Defendant argues in its motion to dismiss that, "Land Shark argues that once the requirements of 38 U.S.C. § 8127(d) have been met," the statute that establishes the "Rule of Two," requires that an award must be made. According to defendant, however, the regulation at FAR Part 13, requires "that '[b]efore making an award, the contracting officer must determine that the proposed price is fair and reasonable.' FAR 13.106-3. Thus, Land Shark essentially argues that the regulatory provisions addressing price fairness are in conflict with the requirements of 38 U.S.C. § 8127(d) and should not be followed." (internal references omitted). Defendant concludes that "[a]ccordingly, any argument that the regulations are inconsistent with the statute must be dismissed for failure to state a claim."

Regarding defendant's motion to dismiss, when examining what must be pled in order to state a claim, a plaintiff need only state in the complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(2) (2019); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The United States Supreme Court has stated:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [Conley v. Gibson, 355 U.S. 41, 47 (1957)]; Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004) (hereinafter Wright &

---

[21] Defendant also correctly notes that pursuant to the Anti-Deficiency Act, the Contracting Office cannot authorize funding beyond the amount appropriated. See 31 U.S.C. § 1341(a)(1) ("An officer or employee of the United States Government or of the District of Columbia government may not- (A) make or authorize an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation."). As noted above, however, the court is unclear why the agency would only allocated $35,000.00 in funding for the shredding contract.

Miller) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), see, e.g., Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, n.1 (2002); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely") . . . . [W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.

Bell Atl. Corp. v. Twombly, 550 U.S. at 555-56, 570 (footnote and other citations omitted; omissions in original); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555-57, 570); Am. Bankers Ass'n v. United States, 932 F.3d 1375, 1380 (Fed. Cir. 2019); Frankel v. United States, 842 F.3d 1246, 1249 (Fed. Cir. 2016); A&D Auto Sales, Inc. v. United States, 748 F.3d 1142, 1157 (Fed. Cir. 2014); Bell/Heery v. United States, 739 F.3d 1324, 1330 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2014); Kam-Almaz v. United States, 682 F.3d 1364, 1367 (Fed. Cir. 2012) ("The facts as alleged 'must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 557)); Totes-Isotoner Corp. v. United States, 594 F.3d 1346, 1354-55 (Fed. Cir.), cert. denied, 562 U.S. 830 (2010); Bank of Guam v. United States, 578 F.3d 1318, 1326 (Fed. Cir.) ("In order to avoid dismissal for failure to state a claim, the complaint must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 557)), reh'g and reh'g en banc denied (Fed. Cir. 2009), cert. denied, 561 U.S. 1006 (2010); Cambridge v. United States, 558 F.3d 1331, 1335 (Fed. Cir. 2009) ("[A] plaintiff must plead factual allegations that support a facially 'plausible' claim to relief in order to avoid dismissal for failure to state a claim." (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570)); Cary v. United States, 552 F.3d 1373, 1376 (Fed. Cir.) ("The factual allegations must be enough to raise a right to relief above the speculative level. This does not require the plaintiff to set out in detail the facts upon which the claim is based, but enough facts to state a claim to relief that is plausible on its face." (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555, 570)), reh'g denied (Fed. Cir.), cert. denied, 557 U.S. 937 (2009); Christen v. United States, 133 Fed. Cl. 226, 229 (2017); Christian v. United States, 131 Fed. Cl. 134, 144 (2017); Vargas v. United States, 114 Fed. Cl. 226, 232 (2014); Fredericksburg Non-Profit Hous. Corp. v. United States, 113 Fed. Cl. 244, 253 (2013), aff'd, 579 F. App'x 1004 (Fed. Cir. 2014); Peninsula Grp. Capital Corp. v. United States, 93 Fed. Cl. 720, 726-27 (2010), appeal dismissed, 454 F. App'x 900 (Fed. Cir. 2011); Legal Aid Soc'y of N.Y. v. United States, 92 Fed. Cl. 285, 292, 298 n.14 (2010).

When deciding a case based on a failure to state a claim, the court "must accept as true the factual allegations in the complaint." Engage Learning, Inc. v. Salazar, 660 F.3d 1346, 1355 (Fed. Cir. 2011); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing Bell Atl. Corp. v. Twombly,

550 U.S. at 555-56 (citing Swierkiewicz v. Sorema N. A., 534 U.S. at 508 n.1))); Scheuer v. Rhodes, 416 U.S. at 236 ("Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982), recognized by Davis v. Scherer, 468 U.S. 183, 190 (1984); Harris v. United States, 868 F.3d 1376, 1379 (Fed. Cir. 2017) (citing Call Henry, Inc. v. United States, 855 F.3d 1348, 1354 (Fed. Cir. 2017)); United Pac. Ins. Co. v. United States, 464 F.3d 1325, 1327-28 (Fed. Cir. 2006); Samish Indian Nation v. United States, 419 F.3d 1355, 1364 (Fed. Cir. 2005); Boise Cascade Corp. v. United States, 296 F.3d 1339, 1343 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2002), cert. denied, 538 U.S. 906 (2003).

"If a bidder wishes to challenge the validity of a regulation governing a procurement, the proper method of doing so is to bring an action in federal district court under the Administrative Procedure Act, 5 U.S.C. § 702." Southfork Sys., Inc. v. United States, 141 F.3d 1124, 1135 (Fed. Cir. 1998) (holding that trial court properly dismissed protestor's counts which challenged the government's promulgation of "regulations that the Air Force followed in conducting" the procurement at issue); see also DGR Assocs., Inc. v. United States, 690 F.3d 1335, 1341 (Fed. Cir. 2012) (noting that "neither" the GAO nor the United States Court of Federal Claims "has the authority to invalidate properly promulgated regulations of an Executive Branch agency"); Precise Sys., Inc. v. United States, 120 Fed. Cl. 586, 597 n.13 (2015) ("[C]hallenges to the validity of a regulation are properly brought to district court." (citing Southfork Sys., Inc. v. United States, 141 F.2d at 1135).

Protestor states that "Land Shark is not arguing that 13.106-3," the regulation in FAR Part 13 regarding price reasonableness, "is illegal, but rather challenges the contracting officer's application of the regulation." Protestor argues that the VA is "refus[ing] to comply with" the Rule of Two doctrine contained at 38 U.S.C. § 8127 and that the VA is looking "for excuses to exclude SDVOSBs" from contracting opportunities. Protestor claims in its reply brief without discussing which specific regulations are at issue, that there are "FAR and VAAR regulations that make" the Rule of Two doctrine "impossible to achieve." Protestor asserts that the VA is allegedly attempting to "circumvent" the Rule of Two at 38 U.S.C. § 8127 by analyzing whether a bidder's price is "fair and reasonable" when evaluating proposals in a SDVOSB set-aside competition, an analysis which protestor contends is not required under the Rule of Two. Protestor overlooks the fact that Solicitation No. 3624119Q0003 indicated that the VA would be conducting a price reasonableness analysis under FAR Part 13. According to Amendment A00002, "price reasonableness shall be in accordance with FAR 13.106-3." According to FAR 13.106-3, codified at 48 C.F.R. § 13.106–3 (2019), "[b]efore making award, the contracting officer must determine that the proposed price is fair and reasonable." 48 C.F.R. § 13.106–3(a).[22] As defendant notes in its reply, "the clear implication of Land

_____

[22] As previously indicated, the solicitation at issue in this protest, Solicitation No. 36C241119Q0003, required a price reasonableness analysis under FAR Part 13. The solicitation stated that "price reasonableness shall be in accordance with FAR 13.106-3."

Shark's statements is that the regulations" for price reasonableness under FAR Part 13 "frustrate the purpose of the statute" codifying the Rule of Two doctrine at 38 U.S.C. § 8127, and, that Land Shark Shredding does appear to be challenging the legality of FAR Part 13's requirement for a price reasonableness analysis.

Protestor also claims that 13 C.F.R. § 125.6 "creates an exception for limitations in subcontracting for small businesses not relying on other socioeconomic set-asides and performing contracts under the Simplified Acquisition Threshold of $250,000."[23] Protestor

---

[23] Section 125.6(a) of Title 13 of the Code of Federal Regulations states:

(a) General. In order to be awarded a full or partial small business set-aside contract with a value greater than the simplified acquisition threshold (as defined in the FAR at 48 CFR 2.101), an 8(a) contract, an SDVO SBC contract, a HUBZone contract, a WOSB or EDWOSB contract pursuant to part 127 of this chapter, a small business concern must agree that:

(1) In the case of a contract for services (except construction), it will not pay more than 50% of the amount paid by the government to it to firms that are not similarly situated. Any work that a similarly situated subcontractor further subcontracts will count towards the 50% subcontract amount that cannot be exceeded.

(2)(i) In the case of a contract for supplies or products (other than from a nonmanufacturer of such supplies), it will not pay more than 50% of the amount paid by the government to it to firms that are not similarly situated. Any work that a similarly situated subcontractor further subcontracts will count towards the 50% subcontract amount that cannot be exceeded. Cost of materials are excluded and not considered to be subcontracted.

(ii) In the case of a contract for supplies from a nonmanufacturer, it will supply the product of a domestic small business manufacturer or processor, unless a waiver as described in § 121.406(b)(5) of this chapter is granted.

(A) For a multiple item procurement where a waiver as described in § 121.406(b)(5) of this chapter has not been granted for one or more items, more than 50% of the value of the products to be supplied by the nonmanufacturer must be the products of one or more domestic small business manufacturers or processors.

(B) For a multiple item procurement where a waiver as described in § 121.406(b)(5) of this chapter is granted for one or more items, compliance with the limitation on subcontracting requirement will not consider the value of items subject to a waiver. As such, more than 50% of the value of the products to be supplied by the nonmanufacturer that are not subject to a waiver must be the products of one or more domestic small business manufacturers or processors.

continues "[t]his fact alone, puts SDVOSBs at a competitive disadvantage when compared to non-SDVOSBs and demonstrates that the contracting officer's calculations for 'fair and reasonable' pricing was prejudicial to SDVOSBs and contravenes Congress's intent in § 8127." Protestor's choice of words: "contravenes Congress's intent," again, points to Land Shark Shredding arguing that the contracting officer is frustrating the purpose of the Rule of Two doctrine at 38 U.S.C. § 8127, and appears to be challenging the legality of FAR Part 13's requirement for a price reasonableness analysis. Therefore, to the extent that protestor is claiming that a price reasonableness analysis required under FAR Part 13, which was incorporated into the solicitation at issue in this case, Solicitation No. 36C241119Q0003, conflicts with the Rule of Two doctrine contained at 38 U.S.C. § 8127(d), protestor's challenge falls outside of this court's jurisdiction and should be dismissed for failure to state a claim.

Additionally, regarding the Rule of Two doctrine, the court notes that in order to promote federal government contracting with service-disabled veteran-owned small businesses, Congress enacted the Veterans Benefits, Health Care, and Information Technology Act of 2006, §§ 502, 503, 120 Stat. 3431–3436 (codified, as amended, at 38 U.S.C. §§ 8127, 8128 (2018)), and included the "Rule of Two" doctrine, which provides that:

> Except as provided in subsections (b) and (c), for purposes of meeting the goals under subsection (a), and in accordance with this section, a contracting officer of the Department [of Veterans Affairs] shall award contracts on the basis of competition restricted to small business concerns owned and controlled by veterans or small business concerns owned and controlled by veterans with service-connected disabilities if the contracting officer has a reasonable expectation that two or more small business concerns owned and controlled by veterans or small business concerns owned and controlled by veterans with service-connected disabilities will submit offers and that the award can be made at a fair and reasonable price that offers best value to the United States.

38 U.S.C. § 8127(d). The FAR sets out its Rule of Two doctrine, which provides in relevant part that:

> (a) To set aside an acquisition for competition restricted to service-disabled veteran-owned small business concerns, the contracting officer must have a reasonable expectation that—
>
>> (1) Offers will be received from two or more service-disabled veteran-owned small business concerns; and

---

(C) For a multiple item procurement, the same small business concern may act as both a manufacturer and a nonmanufacturer.

13 C.F.R. § 125.6(a) (2019).

(2) Award will be made at a fair market price.

(b) If the contracting officer receives only one acceptable offer from a service-disabled veteran-owned small business concern in response to a set-aside, the contracting officer should make an award to that concern. If the contracting officer receives no acceptable offers from service-disabled veteran-owned small business concerns, the service-disabled veteran-owned set-aside shall be withdrawn and the requirement, if still valid, set aside for small business concerns, as appropriate (see [48 C.F.R. §] 19.203).

48 C.F.R. § 19.1405(b)-(c) (2019). In addition, the VA's implementing regulation for the Rule of Two doctrine, which is almost identical to the one contained in the FAR, indicates that the contracting officer, even after setting aside a procurement opportunity for only SDVOSBs, will make an award only if the price received is "fair and reasonable" and that the contracting officer may cancel the solicitation if he or she receives no acceptable proposals. The VAAR[24] provides in relevant part:

(a) The contracting officer shall consider SDVOSB set-asides before considering VOSB set-asides. Except as authorized by 813.106, 819.7007 and 819.7008,[25] the contracting officer shall set-aside an acquisition for competition restricted to SDVOSB concerns upon a reasonable expectation that,

(1) Offers will be received from two or more eligible SDVOSB concerns; and

---

[24] The "VA established the VAAR to codify and publish uniform policies and procedures for VA's acquisition of supplies and services, including construction," and the "VAAR implements and supplements the FAR." 48 C.F.R. § 801.101 (2019). The VAAR and the FAR apply to the above-captioned protest. See 48 C.F.R. § 801.104(a) (2019) ("Unless otherwise specified in this chapter or excepted by statute (i.e., expenditures of the VA Canteen Service) or other VA regulations, the FAR and VAAR apply to all VA acquisitions (including construction) made with appropriated funds."); see id. at § 801.104(b) (2019) ("Use the VAAR and the FAR together. The FAR applies to VA acquisitions except as provided in the VAAR.").

[25] The exceptions referenced in 48 C.F.R. § 819.7005 for 48 C.F.R. § 819.7007 and 48 C.F.R. § 819.7008 are for sole source SDVOSB concerns and sole source VOSB concerns, respectively, See 48 C.F.R. §§  819.7007, 819.7008 (2019). The exception referenced in 48 C.F.R. § 819.7005 for 48 C.F.R. § 813.106 reflects that "Contracting officers may use other than competitive procedures to enter into a contract with a SDVOSB or VOSB when the amount exceeds the micro-purchase threshold up to $5 million." See 48 C.F.R. § 813.106(a) (2019).

(2) Award will be made at a fair and reasonable price

. . . .

(c) If the contracting officer receives only one acceptable offer at a fair and reasonable price from an eligible SDVOSB concern in response to a SDVOSB set-aside, the contracting officer should make an award to that concern. If the contracting officer receives no acceptable offers from eligible SDVOSB concerns, the set-aside shall be withdrawn and the requirement, if still valid, set aside for VOSB competition, if appropriate.

48 C.F.R. § 819.7005 (2019).

Thus, pursuant to the FAR and the VAAR, even after a procurement process has been set aside pursuant to the Rule of Two, the contracting officer must still evaluate proposals to determine if the proposals received are "acceptable," and recognize that a contracting officer may potentially not make an award when no acceptable proposals are received. See 48 C.F.R. § 819.7005(b); 48 C.F.R. § 19.1405(c). In Veterans Contracting Group, Inc. v. United States, 920 F.3d 801, 807 (Fed. Cir. 2019), a case brought by the same counsel representing the protestor in the above-captioned bid protest, the United States Court of Appeals for the Federal Circuit found that the VA rationally cancelled a SDVOSB set-aside contract due to unreasonable pricing contained in the proposals and was not required to make an award. See id. In the trial court case which led to the Federal Circuit opinion, a Judge of this court found that the decision by the Center for Verification and Evaluation (CVE), an office within the VA, to cancel the solicitation for the SDVOSB set-aside contract was not arbitrary and capricious because the contracting officer rationally concluded that there were no "responsive" bids with a "fair and reasonable" price. See Veterans Contracting Grp., Inc. v. United States, 135 Fed. Cl. 610, 616, 619-20 (2017), aff'd, 920 F.3d 801 (Fed. Cir. 2019) (internal quotation marks omitted).[26] The trial court judge noted that the contracting officer rationally concluded that protestor's bid was not "responsive," despite protestor's lower price, because the contracting officer

[l]ooked only to the fact that CVE had removed Veterans from the VIP database and could not have known that CVE had acted arbitrarily. He followed the normal procedures for handling the procurement. Because Veterans did not meet the requirements of a solicitation [that it be listed in the VIP database at the time it submitted its bid], it was ineligible to compete for the contract.

Id. at 619. The trial court judge in Veterans Contracting Group explained that because the price of the "remaining responsive bids were sufficiently above the IGE [independent

---

[26] The Judge in Veterans Contracting Group also found that that the CVE's decision to remove protestor from the VetBiz VIP database was arbitrary and capricious and entered a permanent injunction to restore protestor to the database, making protestor once again eligible to compete for SDVOSB set-aside contracts. See Veterans Contracting Grp., Inc. v. United States, 135 Fed. Cl. at 619.

government estimate] that the officer had discretion to cancel and resubmit the solicitation." Id. The court, therefore, concluded that it would not "overturn" the VA's cancellation of the solicitation. See id. at 620. The United States Court of Appeals for the Federal Circuit in Veterans Contracting Group affirmed the United States Court of Federal Claims' finding that the agency's cancellation of the SDVOSB set-aside contract was proper. See Veterans Contracting Grp., Inc. v. United States, 920 F.3d at 806-07. The Federal Circuit noted that the protestor had "not shown that the contracting officer lacked any rational basis for cancelling" the solicitation. See id. at 806. The Federal Circuit also explained that "[t]he only two acceptable bids" received by the VA "proposed costs significantly higher than the government's estimate for the project. Thus, the contracting officer rationally determined that these prices were unreasonable. Under the circumstances, he had a compelling reason to request cancellation." Id. at 807.

The solicitation at issue in this protest, Solicitation No. 36C241119Q0003, required a price reasonableness analysis under FAR Part 13. The solicitation stated that "Quotes shall be evaluated under FAR Part 13.106-2(b) -- Evaluation of Quotations or Offers," and that "[t]he Contracting Officer will conduct a comparative evaluation of quotes in accordance with FAR 13.106-2 (b)." Further, in response to protestor's request for clarification whether its prices proposed under other VA contracts would be "considered inherently fair and reasonable," the VA stated in Amendment A00002 to Solicitation No. 36C241119Q0003, that "[n]o, this is an open market solicitation; price reasonableness shall be in accordance with FAR 13.106-3." The solicitation's requirement that the contracting officer conduct a price reasonableness analysis pursuant to FAR Part 13 does not conflict with, nor was it prohibited by, the Rule of Two doctrine set out in 38 U.S.C. § 8127(d), which as discussed above, requires the VA to set-aside procurement opportunities for SDVOSB contractors, not that the VA make  an award to a SDVOSB contractor without any consideration of the contractor's proposed price.

Protestor also believes that the United States Supreme Court's decision in Kingdomware Technologies, Inc. v. United States, 136 St. Ct. 1969 (2016) "Mandate[s] Award to Land Shark." (capitalization in original). Protestor argues in its reply brief:

Here's what the US Supreme Court said in Kingdomware:

"Congress' use of the word 'shall' demonstrates that 38 U.S.C.A. § 8127(d) mandates the use of the Rule of Two in all contracting before using competitive procedures. Unlike the word 'may,' which implies discretion, the word "shall" usually connotes a requirement. Compare Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 35, 118 S. Ct. 956, 140 L. Ed. 2d 62 (1998) (recognizing that 'shall' is 'mandatory' and 'normally creates an obligation impervious to judicial discretion'), with United States v. Rodgers, 461 U.S. 677, 706, 103 S. Ct. 2132, 76 L. Ed. 2d 236 (1983) (explaining that '[t]he word "may," when used in a statute, usually implies some degree of discretion'). Accordingly, the Department shall (or must) prefer veteran-owned small businesses when the Rule of Two is satisfied."

(quoting Kingdomware Techs., Inc. v. United States, 136 S. Ct. at 1976). Protestor does not provide much elaboration for why the Supreme Court's language quoted in the protestor's reply brief mandates award to Land Shark. Defendant argues that "*Kingdomware* and the Federal Supply Schedule do not mandate an award to Land Shark," and that "Land Shark never offers a clear explanation of how it gets from the rule of two's purpose to restrict competition to veteran concerns – the plainly stated purpose of 38 U.S.C. § 8127(d) given in its caption -- and the notion that an award must be made without regard to the reasonableness of the offered price."

In Kingdomware, the issue before the United States Supreme Court was whether the Rule of Two doctrine contained at 38 U.S.C. § 8127(d) imposed a mandatory requirement on the VA for "restricting competition" to SDVOSB contractors when the contracting officer "reasonably expect[s] that at least two of these businesses will submit offers and that 'the award can be made at a fair and reasonable price that offers best value to the United States.'" Kingdomware Techs., Inc. v. United States, 136 S. Ct. at 1973-74 (quoting 38 U.S.C. § 8127(d)). In Kingdomware, the VA had awarded a contract to a non-SDVOSB contractor for "Emergency Notification" services under the GSA FSS. See id. at 1975. The Kingdomware protestor, a SDVOSB contractor, took issue with the VA's decision to award the contract to the non-SDVOSB "without first checking to see whether at least two veteran-owned small businesses could perform the work at a fair and reasonable price." Id. at 1975. The Kingdomware protestor alleged that under the Rule of Two Doctrine contained at 38 U.S.C. § 8127(d), the VA was required to determine whether the procurement opportunity could be set-aside for SDVOSBs before competing the requirement as a non-SDVOSB contract. See Kingdomware Techs., Inc. v. United States, 136 S. Ct. at 1975. The government in Kingdomware argued that the VA had discretion in applying the Rule of Two doctrine. See id. at 1977. The Supreme Court found in favor of the Kingdomware protestor, concluding that the VA was required to conduct a Rule of Two analysis before opening competition for a VA contract, including contracts awarded under the GSA FSS, to non-SDVOSBs. See id. The Supreme Court explained:

> We hold that § 8127(d) unambiguously requires the Department to use the Rule of Two before contracting under the competitive procedures. Section 8127(d) requires that "a contracting officer of the Department *shall* award contracts" to veteran-owned small businesses using restricted competition whenever the Rule of Two is satisfied, "[e]xcept as provided in subsections (b) and (c)." (Emphasis added.) Subsections (b) and (c) provide, in turn, that the Department "may" use noncompetitive procedures and sole-source contracts for lower value acquisitions. §§ 8127(b), (c). Except when the Department uses the noncompetitive and sole-source contracting procedures in subsections (b) and (c), § 8127(d) requires the Department to use the Rule of Two before awarding a contract to another supplier. The text also has no exceptions for orders from the FSS system.

Kingdomware Techs., Inc. v. United States, 136 S. Ct. at 1976-77. The Supreme Court emphasized that VA cannot "evade the Rule of Two on the ground that it has already met its contracting goals or on the ground that the Department has placed an order through

the [GSA] FSS [Federal Supply Schedule]. <u>See</u> <u>id.</u> at 1976. The Supreme Court concluded in <u>Kingdomware</u>: "We therefore hold that, before contracting with a non-veteran owned business, the Department must first apply the Rule of Two." <u>Id.</u> at 1977.

Protestor's argument that the United States Supreme Court's decision in <u>Kingdomware</u> demands an award be made to a SDVOSB contractor without any consideration of the bidder's price is misplaced. Contrary to protestor's position, <u>Kingdomware</u> did not address whether, or mandate that, the VA is required to make an award to a SDVOSB once a competition has been set aside for SDVOSB contractors. <u>Kingdomware</u>, as noted above, states that the VA is required to "restrict[] competition" to SDVOSB contractors if and when certain conditions are met. <u>See</u> <u>id.</u> at 1973-74. FAR Part 13's requirement that a contracting officer conduct a price reasonableness analysis does not conflict with the Rule of Two doctrine contained at 38 U.S.C. § 8127(d). Neither the Rule of Two doctrine, nor the <u>Kingdomware</u> decision mandates awards to SDVOSBs without any consideration of price, nor does either prohibit the VA from employing competitive evaluation procedures, such as price analyses. The statute at 38 U.S.C. § 8127(d) states that the VA "shall award contracts on the basis of competition." <u>Id.</u> As the Federal Circuit recently explained in <u>PDS Consultants, Inc. v. United States</u>, 907 F.3d 1345, 1358 (Fed. Cir. 2018):

> [T]he statute applies to *all* contracts—not only *competitive* contracts. The statute requires that, when the Rule of Two is triggered—i.e., when 'the contracting officer has a reasonable expectation that two or more small business concerns owned and controlled by veterans will submit offers and that the award can be made at a fair and reasonable price that offers best value to the United States'—the VA must apply competitive mechanisms to determine to whom the contract should be awarded.

<u>Id.</u> (emphasis in original) (quoting 38 U.S.C. § 8127(d); and citing <u>Kingdomware Techs., Inc. v. United States</u>, 136 S. Ct. at 1976).

In addition, protestor's argument that <u>Kingdomware</u> somehow cabins the VA's ability to evaluate a SDVOSB's price has already been rejected by Judge of this court in <u>Land Shark Shredding, LLC v. United States</u>, 142 Fed. Cl. 301, 308 (2019). In <u>Land Shark Shredding, LLC v. United States</u>, Case No. 18-1568C, the same counsel and same protestor as in the protest currently before the court, brought a similar, but factually distinct, protest regarding a document shredding services contract under a different solicitation number and for a different VA medical facility located in Miami, Florida. <u>See</u> <u>id.</u> at 304. The protestor in <u>Land Shark Shredding, LLC v. United States</u>, Case No. 18-1568C challenged the VA's decision to compare its price with non-SDVOSBs that also had bid on the same solicitation. <u>See</u> <u>id.</u> at 308.

There are multiple similarities between the two protests, including similar allegations regarding the Rule of Two. The heading for Count I for <u>Land Shark Shredding LLC v. United States</u>, Case No. 18-1568C states: "The CO's determination that LSS's price was unreasonable, lacked a rational basis, was arbitrary and capricious, and

involved a violation of regulation or procedure." Complaint Land Shark Shredding, LLC v. United States, Case No. 18-1568C (Fed. Cl. Oct. 9, 2018). The complaint in the above-captioned protest has the identical heading: "The CO's determination that LSS's price was unreasonable, lacked a rational basis, was arbitrary and capricious, and involved a violation of regulation or procedure."[27] The final paragraph of Count I in both complaints is virtually identical as well, as the language in Land Shark Shredding LLC v. United States, Case No. 18-1568C states:

> The basis of the VA's evaluation of Land Shark's proposal was supposed to be based on whether the proposer is a SDVOSB or VOSB or will employ subcontractors who are SDVOSB or VOSB, technical capability, past performance, and price. LSS is a SDVOSB, the VA found that LSS' proposal was technically acceptable, LSS' past performance reviews are all positive, and pursuant to FAR 8.404 Land Shark's price was fair and reasonable. Thus, the VA was required to award the contract to LSS.

Count I for the above-captioned protest states:

> The basis of the VA's evaluation of Land Shark's proposal was supposed to be based on whether the proposer is a SDVOSB or VOSB or will employ subcontractors who are SDVOSB or VOSB, technical capability, past performance, and price. LSS is an SDVOSB, the VA found that LSS' proposal was technically acceptable, LSS's past performance reviews are all positive, and Land Shark's prices have been deemed to be fair and reasonable. Thus, the VA was required to fully evaluate the offers and award the contract to an SDVOSB.

The court in Land Shark Shredding, LLC v. United States, Case No. 18-1568C, summarized Land Shark's Rule of Two argument as:

> The VA also based its evaluation of LSS's bid on a comparison of LSS's prices to the other non-SDVOSB offerors. This is not a fair and reasonable comparison, and it totally negates the value of set-asides. It also ignores the U.S. Supreme Court's holdings in the Kingdomware case, which is discussed in detail below. Comparison of SDVOSB bids to non-veteran and other than small business concerns also violates Congress' express policy regarding SDVOSB assistance programs. "The purpose of the Service-Disabled Veteran-Owned Small Business Program is to provide Federal

---

[27] Although not relevant to the court's analysis, the court notes that the headings for Count II in both the current protest before the court and the protest in Land Shark Shredding, LLC v. United States, Case No. 18-1568C were also identical. Both protests state: The VA's evaluation of proposals was not consistent with the terms of the Solicitation and was therefore unreasonable, lacked a rational basis, was arbitrary and capricious, and involved a violation of regulation or procedure."

contracting assistance to service-disabled veteran-owned small business concerns." FAR § 19.1401(b).

Land Shark Shredding, LLC v. United States, 142 Fed. Cl. at 308. The court in Land Shark Shredding, LLC v. United States, Case No. 18-1568C, however, rejected protestor's argument and explained that:

> Kingdomware does not address price comparisons, in general, or the specific question of how the VA should determine that a SDVOSB's prices are fair and reasonable. The Federal Acquisition Regulation (FAR) provision cited by plaintiff is a policy statement that does not regulate procedures for the price evaluation of proposals in procurements such as this one. In sum, plaintiff objects to the price comparison conducted by the VA here because it does not do enough, in plaintiff's view, to secure government contracts for SDVOSBs. That is a policy argument, unmoored from statute or regulation. Without more, that policy argument is an insufficient ground for this court to invalidate a procurement decision of a federal agency.

Id. (citing cases).

As noted above, the Supreme Court in Kingdomware only reached the conclusion that the VA was required to conduct a Rule of Two analysis before opening competition to a broader audience for a VA contract, including contracts awarded under the GSA FSS, to non-SDVOSBs. See Kingdomware Techs., Inc. v. United States, 136 S. Ct. at 1975. The majority of the Supreme Court's opinion in Kingdomware is devoted to statutory construction regarding 38 U.S.C. § 8127(d). The Supreme Court indicated:

> [W]e hold that § 8127 is mandatory, not discretionary. Its text requires the Department to apply the Rule of Two to all contracting determinations and to award contracts to veteran-owned small businesses. The Act does not allow the Department to evade the Rule of Two on the ground that it has already met its contracting goals or on the ground that the Department has placed an order through the FSS.

> In statutory construction, we begin "with the language of the statute." Barnhart v. Sigmon Coal Co., 534 U.S. 438, 450, 122 S. Ct. 941, 151 L.Ed.2d 908 (2002). If the statutory language is unambiguous and "the statutory scheme is coherent and consistent"—as is the case here—"[t]he inquiry ceases." Ibid.

> We hold that § 8127(d) unambiguously requires the Department to use the Rule of Two before contracting under the competitive procedures. Section 8127(d) requires that "a contracting officer of the Department shall award contracts" to veteran-owned small businesses using restricted competition whenever the Rule of Two is satisfied, "[e]xcept as provided in subsections (b) and (c)." (Emphasis added.) Subsections (b) and (c) provide, in turn, that the Department "may" use noncompetitive procedures and sole-source

contracts for lower value acquisitions. §§ 8127(b), (c). Except when the Department uses the noncompetitive and sole-source contracting procedures in subsections (b) and (c), § 8127(d) requires the Department to use the Rule of Two before awarding a contract to another supplier. The text also has no exceptions for orders from the FSS system.

Kingdomware Techs., Inc. v. United States, 136 S. Ct. at 1976-77. The Supreme Court found in favor of the Kingdomware protestor, concluding that the VA was required to conduct a Rule of Two analysis before opening competition for a VA contract, including contracts awarded under the GSA FSS, to non-SDVOSBs. See id. at 1979. Except for describing the "Rule of Two" at 38 U.S.C. § 8127(d) and noting that 38 U.S.C. § 8127(d) requires contracts be awarded to veteran-owned small businesses when there is a "reasonable expectation" that two or more such businesses will bid for the contract at "a fair and reasonable price that offers best value to the United States," Kingdomware Techs., Inc. v. United States, 136 S. Ct. at 1973 (quoting 38 U.S.C. § 8127), the Supreme Court did not indicate how the VA should evaluate and determine that a SDVOSB's prices are fair and reasonable. Moreover, Kingdomware did not address whether, or find that, the VA is required to make an award to a SDVOSB once a competition has been set aside for SDVOSB contractors. Kingdomware holds that the VA is required simply to "restrict[] competition" to SDVOSB contractors when certain conditions are met. See id. at 1973-74. Therefore, protestor's argument that the Kingdomware decision prohibits the VA from conducting a price reasonableness analysis before making an award, is misplaced. To the extent that protestor challenges the validity of FAR Part 13, protestor fails to state a claim pursuant to RCFC 12(b)(6) and its challenge must be dismissed.

## CONCLUSION

Based on the protest as filed, because protestor lacks standing to bring its protest, and because protestor has failed to state a claim in the above-captioned protest, defendant's motion to dismiss is **GRANTED.** Protestor's complaint is **DISMISSED**.

**IT IS SO ORDERED.**

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**